# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER E. CHAMBERLAIN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-18-3511 |
| KELLY VINCI, | * | |
| CAPT. WEBB, | | |
| CAPT. WOOD, and | * | |
| LT. CUTTER, | | |
| | * | |
| Defendants. | | |

***

## MEMORANDUM OPINION

Plaintiff Christopher E. Chamberlain filed this civil rights Complaint, alleging that Defendants Kelly Vinci, Correctional Captain Douglas Webb, Correctional Lieutenant Mark Cutter, and Captain Barry Wood retaliated against him while incarcerated at the Maryland Correctional Training Center ("MCTC"), and later at the Roxbury Correctional Institution ("RCI"), both in Hagerstown, Maryland.[1] ECF No. 1. Defendant Vinci, proceeding *pro se*, filed in one document an unsigned Answer and self-styled "Counterclaim." ECF No. 33. Capt. Webb, a correctional officer at MCTC, and Lt. Cutter, a correctional officer at RCI, both of whom are represented by the Attorney General of Maryland, filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 37. Capt. Wood has not yet been served with the Complaint.

The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Capt. Webb and Lt. Cutter's motion, construed

---

[1] In his initial Complaint, Chamberlain named Vinci and the Maryland Department of Corrections ("DOC") as defendants. *See* ECF No. 1. He later amended the Complaint to add Capt. Webb, Lt. Cutter, and Capt. Wood. ECF No. 16. Subsequently, the DOC filed a Motion to Dismiss (ECF No. 12), which the Court granted based on Eleventh Amendment immunity. ECF No. 19.

as one for summary judgment, is granted. The matter remains open regarding Chamberlain's claims against Vinci and Capt. Wood. Vinci's unsigned pleading (ECF No. 33) is stricken, and Vinci must file a *signed* responsive pleading, consistent with this opinion and order, or submit a dispositive motion with adequate supporting materials; and Assistant Attorney General Stephanie Lane Weber shall be ordered to provide, under seal, the last known home address of Capt. Wood, solely for the purpose of service of process.

**I.      Background**

The following facts are pertinent to resolving the current motion and are construed most favorably to Chamberlain. In September 2017, Chamberlain began a physical relationship with Vinci, a correctional officer at MCTC. Compl., ECF No. 1 at 3.[2] Their relationship continued until November 2017, when Vinci discovered that Chamberlain had phone contact with other women. ECF No. 1-1 at 2. Specifically, Chamberlain contends that Vinci left him locked in his cell during recreation and sanitation time; caused him to lose a job and his single cell privileges; influenced the denial of his application for a program that Chamberlain describes only as "Wells House"; caused his son and son's mother to be searched before a visit; and told other inmates about the charges against Chamberlain. ECF No. 16 at 2-3. Chamberlain warned Vinci to stop harassing him or he would tell MCTC officials about their relationship. ECF No. 1-1 at 2. Chamberlain contends that Vinci's acts amounted to negligence, intentional infliction of emotional distress, deliberate indifference, and a violation of the Prison Rape Elimination Act. ECF No. 16 at 1-2.

On November 30, 2017, Plaintiff filed Administrative Remedy Procedure ("ARP") No. MCTC-1692-17 regarding his relationship with Vinci. ECF No. 1-1. Consistent with institutional security procedures, the facility placed Chamberlain in administrative segregation on December 1,

---

[2] All citations to filings refer to the pagination assigned by the Court's electronic docketing system.

2017 for the duration of the ARP investigation. Decl. of Capt. Webb, ECF No. 37-2 ¶4. That same day, Plaintiff was transferred to the Maryland Correctional Institution-Hagerstown ("MCI-H"). *Id.* at ¶7.

Defendant Capt. Webb was in charge of investigations at MCTC. On December 4, 2017, Webb interviewed Chamberlain at MCI-H. During the interview, Webb told Chamberlain that he would be transferred to a minimum-security prison if he was honest. ECF No. 16 at 3; ECF No. 37-2 ¶8. Plaintiff cooperated but he remained in administrative segregation. ECF No. 16 at 3-4.

On December 5, 2017, the MCTC ARP Coordinator informed Chamberlain that the Intelligence and Investigative Division ("IID") had assumed responsibility for the investigation regarding ARP No. MCTC-1692-17 in lieu of the ARP process. ECF No. 1-1. Plaintiff "appealed" the transfer of the investigation it IID with the Inmate Grievance Office ("IGO"). On December 6, 2017, Plaintiff was moved to RCI because one of Vinci's relatives was working at MCI-H. ECF No. 37-2 ¶10.

Capt. Webb attests that he played no role in Chamberlain's work assignment or cell placement in November 2017, and played no role in Chamberlain's housing assignment at any other institution. ECF No. 37-2 ¶¶ 6-7, 11. Further, Webb attests that he did not learn of Chamberlain's relationship with Vinci until December 1, 2017. *Id.*; *see also* ECF No. 37-3 at 3. Regarding MCTC's standard protocol, Capt. Webb notes that all inmates with a pending ARP investigation are placed in administrative segregation until the conclusion of the investigation so as to minimize and conflicts or interference that may arise with the due diligence process. ECF No. 37-2 ¶¶ 5-6. If the inmate is subsequently transferred to another institution, the receiving institution retains sole discretion as to the inmate's housing placement, without regard to whether an investigation is pending at the previous institution. *Id.* at ¶¶5, 7.

Similarly, Lt. Cutter, attests that he had no involvement in Chamberlain's initial housing assignment at RCI, or subsequent decisions to keep Chamberlain on administrative segregation. Cutter Decl., ECF No. 37-4 ¶¶4-5, 7. Nor did Lt. Cutter have any involvement in the investigation regarding Vinci.[4] *Id.* at ¶¶ 5-6; ECF No. 37-3 at 5-12. Cutter also affirms that in May 2018, Chamberlain had been assaulted by another inmate, thus necessitating Chamberlain's continued placement in administrative segregation at RCI. ECF No. 37-4 at ¶7.

On June 16, 2018, Chamberlain filed ARP No. RCI-0361-18, in which he alleged retaliation for filing ARP No. MCTC-1692-17. ECF No. 1-2 at 3-6. Because this ARP aggregated several unrelated issues, Chamberlain was thereafter directed to refile the ARP by July 5, 2018, to include a single issue or a reasonable number of closely related issues. *Id.* at 3. Plaintiff resubmitted a two-page ARP on June 26, 2018, in which he names defendants, among others, as participating in a pattern of retaliatory conduct directed toward him. *Id.* at 7-8.

On July 13, 2018, Chamberlain was removed from administrative segregation and transferred to Central Maryland Correctional Facility ("CMCF"), a minimum-security prison. ECF No. 37-3 at 3. On August 26, 2018, Plaintiff appealed to the Commissioner of Correction ARP No. RCI-0361-18, asserting that his claims were never investigated. ECF No. 1-2 at 1. On September 4, 2018, the ARP Coordinator at DOC Headquarters dismissed the appeal for procedural reasons, stating that Plaintiff "failed to resubmit the request in accordance with the coordinator's instructions." *Id.*

As for ARP No. MCTC-1692-17, the IGO informed Chamberlain in writing on September 7, 2018, that any appeal from ARP No. MCTC-1692-17 is dismissed because the identical

---

[4] Chamberlain avers that he told Lt. Cutter he had been placed in administrative segregation because of his relationship with Vinci, to which Cutter replied, "Ms. Vinci is from my neck of the woods and still lives with Capt. Wood." ECF No. 16 at 5.

complaint was pending before the IID, but that the ARP may be reopened should Chamberlain disagree with IID's ultimate determination. ECF No. 1-3. On November 13, 2018, Chamberlain filed his Complaint in this Court.

## II. Standard of Review

Capt. Webb and Lt. Cutter have moved to dismiss the claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment to be granted in their favor. Because the parties have submitted evidence outside the four corners of the complaint and have been given reasonable opportunity to present all pertinent material, the Court will treat the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d).

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted if the movant demonstrates that no genuine issue of disputed material fact exists, rendering the movant entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(d). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). "The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *See Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The Court must view the evidence in the light most favorable to the non-movant without weighing the evidence or assessing witness credibility. *See Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002). Factually unsupported claims and defenses may not proceed to trial. *Bouchat,* 346 F.3d at 526.

**III.    Analysis**

    **A.    Cutter and Webb's Summary Judgment Motion**

Construed liberally, Chamberlain alleges that his placement in administrative segregation violated his right to be free from cruel and unusual punishment as secured by the Eight Amendment to the United States Constitution. A plaintiff retains a cause of action for constitutional violations committed by state actors pursuant to 42 U.S.C. § 1983. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979). Relevant to this case, harsh confinement conditions that "deprive inmates of the minimal civilized measure of life's necessities" may be sufficient to sustain an Eighth Amendment violation. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). By contrast, merely "restrictive or even harsh" prison conditions, "are part of the penalty that criminal offenders pay for their offenses against society" and do not, as a matter of law, constitute an Eighth Amendment claim. *Id.*

Accordingly, the inmate bears the burden of showing that any "deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal alterations omitted). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions, a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

When viewing the evidence in the light most favorably to Chamberlain, no reasonable juror could conclude that his placement in administrative segregation, without more, amounts to cruel and unusual punishment. Chamberlain emphasizes that he had stayed in administrative

segregation for nine months. But Chamberlain has provided no other evidence that placement on this unit for this length of time presented a hardship beyond ordinary prison conditions and which also resulted in physical or emotional injury. Accordingly, the Court grants summary judgment in favor of Capt. Webb and Lt. Cutter on this ground.

Chamberlain also avers that he had been the victim of retaliation for having a relationship with Vinci and filing an ARP grievance. To be sure, inmates retain a First Amendment privilege to petition for redress of grievances; thus "prison officials may not retaliate against prisoners for exercising their right to access the courts," *Booker v. S.C. Dep't of Corr.,* 855 F.3d 533, 544 (4th Cir. 2017), *Hudspeth v. Figgins,* 584 F.2d 1345, 1348 (4th Cir. 1978); *see also Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (recognizing First Amendment right to petition for redress of grievances). That said, Chamberlain points to no evidence demonstrating that Capt. Webb or Lt. Cutter took any retaliatory acts against him. Both defendants have attested under oath to taking no part in Chamberlain's housing placement or investigation into the Vinci matter. Additionally, Chamberlain's continued placement in administrative segregation was further justified after Chamberlain had been assaulted in May 2018. On this record, no reasonable juror could conclude that either defendant retaliated against Chamberlain. Thus, Webb and Cutter's summary judgment motion must be granted.[5]

## IV. Remaining defendants

### A. Vinci

Vinci has filed an unsigned Answer and a self-titled "Counterclaim." ECF No. 33.

---

[5] To the extent that Chamberlain accuses Capt. Webb or Lt. Cutter of state common law violations, the Court declines to exercise supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3). "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction.*" Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing United *Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27 (1966)). Any such claims are dismissed without prejudice so that Chamberlain may pursue file suit in state court, should he choose.

Pursuant to the Local Rules of this Court, "[w]hen a party is appearing without counsel, the Clerk will accept for filing only documents signed by that party." Loc. R. 102.1(a)(ii). Because the pleading is unsigned, it must be stricken from the record. However, the Court will allow Vinci twenty-eight days from the date of this Opinion and accompanying order to submit a signed Answer to Plaintiff's Complaint or a dispositive motion with adequate supporting materials.

The Court also cautions Vinci that although the current pleading is, in part, styled as a "counterclaim," the pleading does not state any counterclaims. A counterclaim is "any claim that—at the time of its service—the pleader has against an opposing party if the claim" that "rises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed R. Civ. P. 13(a). Like a claim pleaded in a complaint, a counterclaim must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). Even though Vinci proceeds pro se, no reasonable reading of the pleading, charitably construed, sets out a counterclaim. Rather, it is, essentially, a memorandum in support of the unsigned Answer. *See* ECF No. 33 at 2-3. Vinci, therefore, is counseled to pay close attention to that which she intends to file in any future submission.

### B. Capt. Wood

Capt. Wood, Chamberlain alleges, is Vinci's "live in mate" and is complicit in a "cover-up" of "all the events." ECF No. 16 at 4. Wood has not yet been served and is no longer employed with the DOC. ECF No. 37-1 at 1 n.1. Because Chamberlain is incarcerated and proceeds pro se, the Court will assist him in identifying the correct address of this Defendant so that service of process may be effected. *See Gordon v. Leeke*, 574 F.2d 1147, 1152-53 (4th Cir. 1980); *see also Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 554-55 (7th Cir. 1996). The Assistant

Attorney General is ordered to provide the last known home address of Capt. Barry Wood, solely to effectuate service of process, or alternatively to inform the Court and Chamberlain as to why Wood's address is not available. Given obvious confidentiality considerations, the Clerk shall place under seal any submission that includes Capt. Wood's address or other personal information.

**VI. Conclusion**

Capt. Webb and Lt. Cutter's motion, construed as one for summary judgment, is granted. Vinci's unsigned pleading (ECF No. 33) is stricken, and Vinci is directed to file a signed answer or dispositive motion with adequate supporting materials within twenty-eight days from this opinion and accompanying order. As for Capt. Wood, Assistant Attorney General Stephanie Lane Weber is directed to file under seal the last known home address for Wood, and the Complaint shall be served on Wood as set forth in the Order.

___1/24/2020_____  
Date

_____/S/_____  
Paula Xinis  
United States District Judge